LARRY SEAMAN *v.* KING ARTHUR COURT, INC., ET AL.

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE No. 205559
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed May 30, 1979

*Schatz, Schatz, Ribicoff & Kotkin,* for the plaintiff.

*Pearson, Baum & Weinstein,* for the defendants.

BRIAN O'NEILL, J.  The plaintiff in the present matter is a builder and licensed real estate broker. His real estate brokerage emphasis is on commercial transactions.  The defendants are a corporation and its two principals, Samuel A. Schwartz and Kenneth S. Schwartz, and are engaged in real estate ventures.  At one time they were the owners of certain real property in Niantic, Connecticut.  This property, in part, is the subject of this suit.

In March of 1972 the defendants were improving the subject property by way of the construction and erection of apartment units thereon.  The plaintiff became aware of this development.  He was also aware that there was a possible buyer for the property (the Phi Niantic Corporation) should it be marketed.  Thereupon, the plaintiff approached the defendant Kenneth Schwartz and asked if the property was for sale.  He was advised that it was, indeed, for sale.

The parties have stipulated to certain facts. Among these is an "Agreement of Sale" dated August 8, 1972, endorsed by Kenneth S. Schwartz as president of the named defendant as seller and by Robert Paltrow as president of Phi Niantic Corporation as buyer.  The subject of the agreement is the property in question.  The stipulation provides further that the plaintiff was the sole procuring cause of Phi Niantic Corporation for the purchase of the property and that the named defendant agreed to pay him $25,000 for his services.  This fixed sum resulted from negotiations between the plaintiff and Kenneth Schwartz at the time the "Agreement of Sale" was executed on August 8,

1972. Until that time, the plaintiff had expected to earn 6 percent of the purchase price of the property as his commission. Financial troubles, however, surfaced on that day. There were no funds with which to pay the plaintiff's commission. Accordingly, the plaintiff agreed, in lieu of 6 percent of the purchase price, to accept $25,000 as his fee on the closing day. The payment was to be made by the named defendant.

The closing date was November 17, 1972. The plaintiff attended the closing. He anticipated receiving a check for $25,000. Once again, money difficulties arose. The plaintiff received not a check but a promissory note in the amount of $25,000 with an expressed interest rate of 8 percent per annum, signed by the individual defendants and in behalf of the named defendant. The note was payable on or before fifteen months from its date of making, November 17, 1972. It has not been paid. Its nonpayment is the genesis of this suit.

The case presents an interesting question. The plaintiff sues on the note itself, claiming to be a holder in due course. The defendants argue that the action is one for recovery of a real estate commission and, because there is no writing supportive of the understanding among the parties, that it must fail due to § 20-325a (b) of the General Statutes.[1] In essence, the law requires that an action to recover

[1] General Statutes § 20-325a (b) provides: "No person, licensed under the provisions of this chapter, shall commence or bring any action in respect of any acts done or services rendered after October 1, 1971, as set forth in subsection (a), unless such acts or services were rendered pursuant to a contract or authorization from the person for whom such acts were done or services rendered. To satisfy the requirements of this subsection any such contract or authorization shall (1) be in writing, (2) contain the names and addresses of all the parties thereto, (3) show the date on which such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization and (5) be signed by the parties thereto."

a commission arising out of a real estate transaction cannot be maintained unless there is a written contract or authorization expressing the underlying agreement.

The plaintiff counters by claiming that, if the suit cannot be maintained on the note itself, there nevertheless is a supportive writing represented by the "Agreement of Sale" and the note in question. In other words, the plaintiff assumes two positions: one, the action is one upon a negotiable instrument and, two, should this not be the case there are writings sufficient to satisfy the relevant statute.

The second position can be handled easily. The statute precludes a suit for a real estate commission unless the action is brought "pursuant to a contract or authorization . . . in writing . . . ." It contemplates an existing agreement. The writing must precipitate the services. The services cannot precipitate the writing. This claim falls short of the mark.

The other claim regarding the nature of the action, i.e., its generating from the failure to pay a promissory note, presents a difficult question with which the court must wrestle.

Section 20-325a acts as a restriction on the conduct of an occupation which, were it not for the statute, would be allowed. It must be strictly construed. *Connecticut Chiropody Society, Inc.* v. *Murray,* 146 Conn. 613, 617. See also *Arruda Realty, Inc.* v. *Doyon,* 35 Conn. Sup. 617. And it will be so construed if it is concluded that the statute is applicable.

We must now turn to the intentions of the parties at the time the note was given. Was it the equiva-

lent of cash or was it evidence of a debt?[2] It is clear that the parties did not treat the note as an equivalent of cash. *Sadd* v. *Heim*, 143 Conn. 582, 585. It was meant to represent evidence of services rendered. And those services emanate from real estate brokerage activities. As expressed above, a claim for these services, if it is to be enforceable, must be supported by a written contract or authorization. Neither is in evidence. It is not that the plaintiff does not have a claim; it is that he has a claim which is unenforceable. The plaintiff chose to operate on an oral basis. He did so at his peril. *Good* v. *Paine Furniture*, 35 Conn. Sup. 24.

---

[2] There is a deposition on file. It contains an exchange between counsel for the defendants and the plaintiff. It says the following:

"Q. Now, under what circumstances was this note executed?

A. Well, when we came to the closing of the sale, I had come to the closing anticipating I was going to pick up a check for twenty-five thousand dollars and, again, I got the same story from Kenny that he had no money, and he couldn't pay me.

Q. Was this because Mr. Paltrow couldn't come up with enough or as much by way of a — of cash in the transaction as was anticipated by Mr. Schwartz?

A. No, I think it was because Kenny thought he had such large expenses. You see, the deal was based on the fact that there were three buildings completed, and Kenny was to complete the other six buildings, and Kenny claims it cost him much more to complete than he anticipated, and he had no funds, so, he couldn't pay me at that time. So, then, we worked out a promissory note for the money.

Q. When was that?

A. At that closing.

Q. At the closing?

A. Yes.

Q. Was this prior to the closing being — withdraw the question. Is this prior to the actual conclusion of the deal between Mr. Schwartz, doing business as King Arthur Court and Mr. Paltrow?

A. Yes, I believe so. At the same time, while the negotiations were going on and I approached Kenny for a check, he said he couldn't make it, and one part of the discussion involved whether he would give me a promissory note and when he got the money he would pay me, which wouldn't be too long."

Accordingly, it is held that this suit is one for a real estate brokerage commission and that there is no writing as required by § 20-325a of the General Statutes. The suit cannot be maintained.

Judgment may enter for the defendants.